IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-30059 |
| ) | |
| SYED F. AHMAD and MUHAMMAD ) | |
| USAMA, ) | |
| ) | |
| Defendants. ) | |

OPINION

RICHARD MILLS, United States District Judge:

Defendants Syed F. Ahmad and Muhammad Usama have filed a joint motion to suppress.

In a Report and Recommendation, United States Magistrate Judge Tom Schanzle-Haskins has recommended that the joint motion to suppress be denied.

The Defendants have filed objections to the Report and Recommendation.

I.  BACKGROUND

The Defendants are charged with possession of 100 kilograms or more of a mixture or substance containing marijuana, with intent to distribute, in violation of 18 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2. The charge stems from the Defendants' arrest on December 31, 2017, by Morgan County, Illinois Deputy Sheriff Derek

1

Suttles, following his discovery of a large amount of marijuana in a recreational vehicle ("RV") in which Defendants were traveling. The Defendants were initially charged in the Circuit Court for Morgan County, Illinois. *See People v. Ahmad and Usama*, Case Nos. 2018-CF-1 and 2018-CF-2 (State Court Proceedings).

The Defendants filed motions to suppress the evidence in the State Court Proceedings. The Morgan County Circuit Court held an evidentiary hearing, the transcript of which is attached to the Defendants' motion. On September 20, 2018, the Morgan County Circuit Court denied the motions to suppress.

Following their arrest and arraignment in this case, the Defendants filed the joint motion to suppress. Both Defendants and the Government waived having a second evidentiary hearing before this Court. *See* Minute Entry of proceedings on February 12, 2019; Status Report of Muhammad Usama entered February 15, 2019.

In the Status Report of February 15, 2019, counsel requests oral argument on behalf of Mr. Usama. Upon reviewing the entire record, including the transcript of the state court hearing and the pleadings in this case, the Court finds that oral argument is not necessary in considering the Defendants' joint motion to suppress.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court will make a de novo determination of the portions of the Report and Recommendation to which the Defendants object. In the memorandum in support of their objections, the

Defendants ask the Court to conduct a de novo hearing. However, the Court finds that another hearing is not necessary.

The Court notes that Mr. Ahmad and Mr. Usama do not object to the summary of facts contained in the Report and Recommendation. Accordingly, the Court need not recite the factual background here.

## II.   DISCUSSION

A. <u>Whether there was a seizure of Ahmad and Usama</u>

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. In the Report and Recommendation, the magistrate judge considers whether a seizure of the Defendants occurred. Judge Schanzle-Haskins discussed the relevant factors, *see United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015), and found that Deputy Suttles' encounter with Mr. Ahmad was consensual, at least up until the time Ahmad consented to the search of the RV the first time, which occurred within approximately 15 minutes of the beginning of the encounter. Specifically, "a reasonable person would have understood that he was free to go at least up until Ahmad consented to the search of the RV." Doc. No. 30, at 14. Moreover, "the free-air sniff by Kilo [the drug-sniffing dog] was valid and the subsequent search was valid." *Id*.

(1)

The Defendants object to this portion of the Report and Recommendation and claim there was a seizure. They dispute the magistrate judge's finding that Deputy Suttles' taking and retaining of Mr. Ahmad's driver's license and the rental agreement was of little significance and did not turn the encounter into a seizure. Judge Schanzle-Haskins notes that "very little time passed from the moment that Ahmad handed the rental agreement to Deputy Suttles until he consented to the search." Doc. 30, at 12. Because of the brief amount of time that elapsed, the Report and Recommendation provides that "a reasonable person would not have perceived that Suttles intended to continue to retain the rental agreement and driver's license" and would have perceived that he was free to go. *Id*. at 13-14. The Defendants claim the finding is an absolute misstatement of the law and contradicts applicable precedent in the Seventh Circuit and other jurisdictions.

"Officers' retaining airline tickets and driver's licenses has been a crucial factor in finding that a seizure has occurred." *United States v. Borys*, 766 F.2d 304, 310 (7th Cir. 1985). The Seventh Circuit has found that, when an officer tells a defendant he is "under investigation for carrying drugs or retain[s] possession of his identification, travel documents, and/or luggage, we held there was a seizure." *United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008). If an officer generally identifies himself as a narcotics investigator and immediately returns the defendant's

4

identification and travel documents, the Seventh Circuit has held the initial encounter did not ripen into a seizure. *Id*.

It is unclear precisely how much time elapsed between Deputy Suttles' retention of the rental agreement and driver's license and obtaining Ahmad's consent to search. The documents were not immediately returned and remained in Suttles' possession for at least a few minutes. Because the officer retained possession of the rental agreement and driver's license for a very brief period before obtaining consent, an argument can be made that a seizure occurred. At the outset, however, Suttles told Ahmad he was free to leave at any time. Suttles testified at the hearing that, if Ahmad had asked for his license and rental agreement to be returned, Suttles would have returned both items.

Given the number of actions that took place in the course of 15 minutes as related on pages 12 and 13 of the Report and Recommendation, the Court agrees with the magistrate judge's finding that "very little time passed from the time that Suttles completed the check for warrants to the next event in the sequence in which Suttles asked for and received Ahmad's consent to [] search the RV." Doc. No. 30, at 13. Although Suttles told Ahmad he was working drug interdiction on I-72, Suttles never told Ahmad he was the subject of a drug investigation. He did not tell Ahmad that he was calling an Illinois State Police K-9 to the scene. Upon considering the brief timeframe of the entire encounter and all of the *Shields* factors

5

as discussed in the Report and Recommendation, the Court finds that a reasonable person would have understood he was free to go, up until the point that Ahmad consented to the search of the RV. Accordingly, the Court agrees with the magistrate judge and finds that Ahmad was not seized.

(2)

The magistrate judge also found that a detention did not occur when Mr. Usama was locked in the back of the squad car. Mr. Ahmad had already consented to the search. Deputy Suttles did not order Usama into the car. Usama voluntarily entered the squad car after Suttles asked him if he would be more comfortable talking to Suttles while sitting in the car on what was a very cold day. Suttles had told Usama he was free to go. Suttles got out of the car when Illinois State Trooper Eli Adams arrived with Kilo. Usama was in the squad car for no more than two minutes before Kilo alerted. He did not tell Suttles he wanted to be back out into the cold during that couple of minutes. Judge Schanzle-Haskins found that Deputy Suttles' encounter with Mr. Usama was consensual. Usama did not object to Ahmad's consent or otherwise withdraw or vitiate the consent.

In the memorandum in support of their objections, the Defendants note Deputy Suttles knew his squad car's rear door could not be opened from the inside. Mr. Usama was locked inside the car without any ability to get out on his own. If

Suttles had told Usama to sit in the front passenger seat, Usama would have been able to exit. The deputy's action was deliberate and calculated.

The Defendants claim the magistrate judge's conclusion ignores the context and reality of the situation, as well as Seventh Circuit precedent. In *United States v. Ienco*, 182 F.3d 517 (7th Cir. 1999), the Seventh Circuit found that a defendant who was locked inside a police car for approximately 30 minutes was seized and thus not free to leave. *See id*. at 523-25. Similarly, Usama would not have felt free to leave in this case. Additionally, the Defendants allege no reasonable person in Ahmad's position would have felt free to leave after an officer locked his passenger in the backseat of a squad car.

The Court is unable to conclude that Usama was seized in voluntarily sitting in the car to escape the cold. This is not a situation like *Ienco* where the defendant remained in a locked police car for an extended period. Suttles left Usama alone in the car for no more than a couple of minutes when Trooper Adams arrived with Kilo. Suttles testified Usama was free to leave and would have been let out if he indicated he wished to exit the squad car. Accordingly, the Court agrees with the magistrate judge and concludes that a seizure did not occur.

B. <u>Reasonable suspicion</u>

Additionally, Judge Schanzle-Haskins found that Deputy Suttles had reasonable suspicion to detain the Defendants before Mr. Ahmad gave him the rental

7

agreement and, thus, before any detention occurred. Therefore, even if Suttles detained the Defendants before he had possession of the rental agreement, the brief detention was valid before Ahmad gave valid consent to search. An officer may detain a person to conduct an investigative stop if the officer has "reasonable suspicion based on articulable facts that something was amiss." *United States v. Thomas*, 87 F.3d 909, 911 (7th Cir. 1996).

Judge Schanzle-Haskins found that Deputy Suttles had sufficient information that Ahmad and Usama were engaging in criminal activity before Suttles had possession of the rental agreement and Ahmad's driver's license. The magistrate judge notes the following factors: (1) Ahmad committed a minor traffic violation when he did not signal properly upon exiting I-72; (2) the RV was registered to a white couple in their 70's, a description which did not fit Defendants; (3) a Love's Truck Stop employee told Suttles that the Defendants were acting suspiciously in the store and that they seemed to be waiting for Suttles to leave before exiting; (4) Ahmad told Suttles that they rented the RV, though the RV was registered to two individuals and not a company that rented vehicles; and (5) Ahmad told an implausible story that he and Usama were traveling from Houston, Texas to Columbus, Ohio, but chose to fly with Ahmad's two children from Houston, Texas to somewhere in Idaho to rent the RV and to drive from Idaho to Ohio, instead of

just renting an RV in Houston and driving directly to Columbus, because RVs were much cheaper to rent in Idaho.

The magistrate judge found the story to be "clearly implausible, if not preposterous," *see* Doc. No. 30, at 19, stating that upon hearing Ahmad's story, Suttles was aware of enough articulable facts to have reasonable suspicion that "something was amiss" and to detain the Defendants. Deputy Suttles confirmed that, by this time, he had begun a drug investigation of the Defendants. Soon thereafter, Ahmad voluntarily consented to the search. Judge Schanzle-Haskins found, therefore, that even if Suttles detained Ahmad and Usama after he had the rental agreement, the detention was valid for the brief time before Ahmad consented to the search. At that point, Suttles had valid consent to search and the search was valid.

In the memorandum in support of their objections, the Defendants claim that each and every fact noted by the magistrate judge amounted to hunches that did not develop into the required articulable facts. In determining whether reasonable suspicion exists, courts consider "the totality of the circumstances—the whole picture." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018). Courts must "consider the reasonable inferences that a law enforcement officer could draw from the objective facts in combination." *Id*. "While an officer does not need to rule out innocent explanations for conduct that appears suspicious at first, a court may consider how facts later obtained mitigate or dispel suspicion." *Id*. at 669-70

(internal citation omitted). The Defendants claim that Deputy Suttles' further investigation of his hunches dispelled any suspicions that might initially have existed.

The Defendants note that, while a store employee told Suttles he believed Ahmad and Usama were waiting for him to leave before exiting the store, the employee's assumptions proved incorrect, as the two men exited the store moments later while Suttles remained in the parking lot. Moreover, neither man acted suspiciously nor tried to evade Deputy Suttles during the encounter. They did not appear nervous or rushed. Therefore, the Defendants say this fact was not and could not have been a factor to establish reasonable suspicion or probable cause to detain Mr. Ahmad and Mr. Usama. However, the Court believes the employee's statement would have caused a reasonable officer to be suspicious.

The Defendants further claim that, while Suttles noticed the RV's registration reflected different owners, Ahmad assured him they lawfully rented the RV and provided a valid rental agreement proving such. The Defendants note that, although the magistrate judge found that their travel itinerary to "implausible, if not preposterous," a couple's decision to drive across the country does not amount to reasonable suspicion. *See Rodriguez-Escalera*, 884 F.3d at 669-70. Additionally, a check of Ahmad's license and the rental agreement showed that Ahmad was from Texas and he rented the RV in Idaho, which leads to the logical conclusion that

Ahmad's statements to Suttles were true. The Defendants state that, whether or not it is customary to travel from Texas to Idaho to rent an RV, that is precisely what Ahmad and Usama did.

The Defendants assert Deputy Suttles never gleaned any information before or after obtaining Ahmad's driver's license and rental agreement that amounted to reasonable and articulable suspicion that criminal activity was afoot. Mr. Ahmad had no outstanding warrants nor any prior narcotics arrests. Moreover, Ahmad and Usama were not acting nervous and gave consistent responses to his questions. Nevertheless, the Defendants contend that by retaining the rental agreement and driver's license, Suttles prevented Ahmad from leaving despite having no basis to do so.

The Court disagrees with the Defendants and finds there were just enough specific facts and reasonable inferences therefrom to establish reasonable suspicion. Deputy Suttles had information from the gas station employee that the men were acting suspiciously inside the store. While the Defendants gave the same accounts of their travel, Suttles found the accounts to be suspicious. While there is nothing extraordinary about driving across the country, the Court believes that most police officers would find the Defendants' travel accounts—flying from Houston to Idaho in order to rent an RV to drive to Columbus—to be somewhat suspicious and possibly suggesting criminal activity.

Based on this information, the Court finds that Deputy Suttles had a reasonable, articulable suspicion that a crime had occurred or criminal activity was afoot, sufficient to detain the Defendants until a free-air sniff of the RV could be conducted.

The Defendants further claim that Deputy Suttles unlawfully prolonged the seizure. Even if reasonable suspicion existed, Suttles did not have authority to continue to detain the men after Ahmad's warrant check cleared. "[A] seizure turns unlawful if it is prolonged in order to conduct a dog sniff (which requires bringing the dog to the scene of the stop, and therefore takes a while), without reasonable suspicion that there are illegal drugs secreted in the stopped vehicle." *United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015) (citing *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-16 (2015)).

Deputy Suttles testified that his entire contact with the Defendants lasted approximately 15 minutes. Assuming that a seizure occurred when Suttles took Ahmad's license and the rental agreement, it would have been a few minutes less than 15 minutes. The Court concludes this was not an unreasonable amount of time to prolong the stop. *See United States v. Pettit*, 785 F.3d 1374, 1378, 1383 (10th Cir. 2015) (noting that reasonable suspicion justified the officer prolonging the stop by 15 minutes for the drug dog to arrive).

## III. CONCLUSION

For the reasons stated herein, upon considering the Defendants' objections and the entire record, the Court agrees with the findings of the Report and Recommendation. The Court finds that Deputy Suttles' encounter with the Defendants was consensual and did not constitute a seizure until Mr. Ahmad validly consented to the search of the RV. The Court further finds that even if the consensual encounter turned into a seizure, Suttles had reasonable suspicion that Ahmad and Usama had committed a crime or were engaged in criminal activity. The brief detention before Ahmad consented to the search was valid.

<u>Ergo</u>, the Defendants' Objections to the magistrate judge's Report and Recommendation [d/e 31] are DENIED.

The Court ADOPTS the Report and Recommendation [d/e 30] entered by United States Magistrate Judge Tom Schanzle-Haskins and hereby DENIES the Joint Motion to Suppress [d/e 19] of Defendants Syed F. Ahmad and Muhammad Usama.

ENTER: May 24, 2019

    FOR THE COURT:

                      /s/ *Richard Mills*
                      Richard Mills
                      United States District Judge